**STATE of Tennessee, Appellant,**

v.

**William ELLISON, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Nov. 9, 1992.

Charles W. Burson, Atty. Gen. and Reporter, John B. Nisbet, II, Asst. Atty. Gen., Nashville, Alfred C. Schmutzer, Jr., Dist. Atty. Gen., Gregory Scott Green, Asst. Atty. Gen., Sevierville, for appellant.

Tim S. Moore, James McSween, III, Newport, for appellee.

## OPINION

DAUGHTREY, Justice.

On application of the state, we granted review in this case to determine the appropriate relief for a violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The defendant, William Ellison, was charged with two counts of the sale of cocaine. His case was tried in May 1990. During jury selection, defense counsel made a timely objection to the state's use of a peremptory challenge to strike the only black member of the jury venire. Citing *Batson*, the trial court ruled that Ellison lacked standing to challenge the propriety of the prosecution's action, because he and the excluded venireperson were not of the same race.

Following Ellison's conviction on both charges, he appealed and raised the *Batson* issue before the Court of Criminal Appeals. That court held that, in light of the United States Supreme Court's subsequent opinion in *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the trial court's ruling on standing was in error and, further, that a new trial was required to correct that error. The state appealed the question of appropriate relief, which is now before us for determination.

The development of federal constitutional law in this area traces back to *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In that case, the United States Supreme Court held for the first time that prosecutors could not use peremptory challenges deliberately to exclude prospective jurors on account of their race. The Court found that racially-motivated exclusions denied a criminal defendant equal protection of the law, in violation of the Fourteenth Amendment to the United States Constitution. *Id.* at 204, 85 S.Ct. at 826. Under *Swain,* however, a defendant could prove purposeful discrimination only by demonstrating that the prosecutor had systematically used peremptory challenges against black venirepersons over a period of time. *Id.* at 227, 85 S.Ct. at 839.

Hailed at the time for recognizing that the sanctity of the peremptory challenge must give way in the face of racially-imbalanced juries, the Supreme Court ultimately recognized in addition that the *Swain* approach was too cautious to solve the problem of racial discrimination in the selection of juries in criminal cases. As a result, in its 1986 decision in *Batson v. Kentucky,* the Court lessened the evidentiary burden established in *Swain,* so that a defendant could make a prima facie case of purposeful discrimination without proving a past pattern of abuse, but could rely instead on evidence relating to the prosecutor's exercise of peremptory challenges at the defendant's trial. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722.

In order to establish a prima facie case of purposeful discrimination, the *Batson* court required the defendant to satisfy a three-part test. As a threshold matter, the defendant had to show that he was a member of a "cognizable racial group" and that the prosecutor had exercised peremptory challenges to exclude prospective jurors of the defendant's race. *Id.* Second, to prove the purposeful nature of the prosecutor's action, the *Batson* court allowed the defendant to "rely on the fact, as to which there can be no dispute, that peremptory chal-

lenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " *Id.* (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)). Third, the defendant must show that these facts and "any other relevant circumstances" raised an inference that the prosecutor had used peremptory challenges to exclude potential jurors "on account of their race." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. According to *Batson,* once the defendant has met this three-part test and has thereby established a prima facie case of purposeful discrimination, the burden shifts to the prosecution to prove a racially-neutral reason for excusing the jurors in question. *Id.* This explanation must be based on something more than stereotypical assumptions, but it need not rise to the level required to justify the exercise of a challenge for cause. *Id.* at 97, 106 S.Ct. at 1723.

Finally, *Batson* requires the trial court to weigh the evidence presented by both sides and decide whether the prosecution engaged in purposeful discrimination, in violation of the defendant's equal protection rights. *Id.* at 98, 106 S.Ct. at 1724. If the trial court determines that the facts establish a prima facie case of purposeful discrimination and the prosecutor does not come forward with a neutral explanation, the defendant's conviction must be reversed. *Id.* at 100, 106 S.Ct. at 1725.

Between the date of the defendant's trial in May 1990 and the submission of the case to the Court of Criminal Appeals a year later, the United States Supreme Court modified *Batson* by eliminating the requirement that the defendant and any wrongfully excluded jurors must be of the same race. *Powers v. Ohio,* — U.S. —, —, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991). In reaching its conclusion, the

Court reasoned that even though a criminal defendant of one race has not necessarily been denied equal protection when prospective jurors of another race are excluded from service, an improperly excluded juror of another race is a victim of racial discrimination, and the defendant has third-party standing to raise the equal protection rights of the excluded juror. *Powers,* — U.S. at —, 111 S.Ct. at 1373.[1] Hence, under *Powers,* "race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges," *id.,* and the defense can establish a prima facie case by showing that the prosecution used its peremptory challenges to exclude members of the venire who are of a cognizable racial group.

 Applying *Batson* and *Powers* to the facts in this case,[2] we conclude that the Court of Criminal Appeals was correct in holding that in light of subsequent events, the trial court's ruling on the defendant's standing to raise a *Batson* challenge cannot be sustained. However, we cannot agree with the intermediate court's ruling that the record in this case conclusively supports the necessity of retrial. The appropriate remedy here, as with any alleged *Batson* violation, is to remand the case to the trial court for a hearing limited to that issue. At the *Batson* hearing, defendant Ellison should be given the opportunity to proceed with his efforts to prove a violation, and the state should be allowed to explain the reason for its exclusion of the juror in question. *See State v. Bell,* 745 S.W.2d 858, 867 (Tenn.1988). The trial court must then decide whether there has been purposeful racial discrimination in the state's exercise of its peremptory challenge. *Id.*

 We are not unmindful of the concern of the Court of Criminal Appeals that "[s]taged recreations, attempted long after

---

1. The Court found that the defendant has standing for three reasons. First, the discriminatory use of peremptory challenges causes the defendant cognizable injury. *Id.* at —, 111 S.Ct. at 1371. Second, the defendant is a motivated, effective advocate of the excluded juror's rights since they both share a common interest in removing racial discrimination from the courtroom. *Id.* at —, 111 S.Ct. at 1372. Third, the Court found the defendant has third-party

standing because the dismissed juror is not likely successfully to assert a claim for a discriminatory dismissal from a venire. *Id.* at —, 111 S.Ct. at 1373.

2. Although *Powers* was decided approximately ten months after this case went to trial, the rule announced in *Griffith v. Kentucky* requires us to apply *Powers* retroactively. *Griffith,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

the actors have departed and the scenery moved, rarely precisely recapture the moment." We thus caution the trial court against acceptance of any explanation that is not fully consistent with the broad reach of equal protection in *Batson* and *Powers.* As the United States Supreme Court has noted: "[T]he prosecutor [may not] rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith' in the matter." *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724 (citing *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972)). If these general assertions were accepted as sufficient to rebut a defendant's prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." *Id.* (citing *Norris v. Alabama,* 294 U.S. 587, 598, 55 S.Ct. 579, 584, 79 L.Ed. 1074 (1985)). "The prosecutor therefore must articulate a neutral explanation *related to the particular case...*." *Id.* (emphasis added).

■ Because the core issue is the prosecutor's discriminatory intent, or lack thereof, the trial court's finding "largely will turn on evaluation of credibility." *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. As the United States Supreme Court has noted in *Hernandez v. New York,* — U.S. —, —, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991), "[t]here will seldom be much evidence bearing on th[e] issue [of discriminatory intent], and the best evidence often will be the demeanor of the attorney who exercises the challenge." Nevertheless, a race-neutral *reason* for the challenge or challenges in question must be supplied, and, as noted above, the attorney's statement that he or she had no intent to discriminate, without more, will not be sufficient to meet the requirements of *Batson.* If the passage of time or the lack of an adequate record prevents the prosecution from reconstructing the factual circumstances of the challenged strike, the trial court must grant the defendant a new trial.

■ Although the United States Supreme Court has indicated that there are no hard and fast rules governing *Batson*

challenges,[3] the following observations may be of some assistance to the trial court on remand. First, even though only one member of the venire in this case belonged to a "cognizable racial group," this fortuity does not prevent the defendant from establishing a prima facie case of purposeful discrimination. In light of the United States Supreme Court's admonition against the use of "peremptory challenges as a mask for race prejudice," *Powers,* — U.S. at —, 111 S.Ct. at 1374, we conclude that the exercise of even one peremptory challenge in a purposefully discriminatory manner would violate equal protection.

Moreover, "[j]ury service preserves the democratic element of the law, as it guards the rights of the parties and insures continued acceptance of the laws by all of the people." *Powers,* — U.S. at —, 111 S.Ct. at 1369. Recognizing this policy consideration, the Supreme Courts of Wisconsin and Arizona have held that a prima facie case of racial discrimination can be established where the prosecutor uses a peremptory challenge to strike the only black member of the venire. *State v. Walker,* 154 Wis.2d 158, 453 N.W.2d 127, 135–36 (1990), *cert. denied,* — U.S. —, 111 S.Ct. 397, 112 L.Ed.2d 406 (1990); *State v. Bailey,* 160 Ariz. 277, 772 P.2d 1130, 1134 (1989). The United States Court of Appeals for the Eleventh Circuit has reached the same conclusion. *United States v. Horsley,* 864 F.2d 1543, 1546 (11th Cir.1989).

■ Finding that the exclusion of one minority venireperson can constitute a prima facie case is consistent with the principle set out in *Batson.* Although the United States Supreme Court noted in that case that a "pattern" of strikes against black jurors can give rise to an inference of discrimination, the Court also stated that proof of a pattern is only one way to establish a prima facie case. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. In order to support an inference of purposeful discrimination under *Batson,* the defendant may also rely on the prosecutor's statements and questions during *voir dire* and during the exercise of his challenges. *Id.*

---

**3.** *See Powers,* — U.S. at —, 111 S.Ct. at 1374.

Second, we recognize, as did the United States Supreme Court in *Powers*, that a prima facie case of racial discrimination may be more difficult to establish if the defendant and the excused potential juror are not of the same race. *Powers*, —— U.S. at ——, 111 S.Ct. at 1373–74. Nevertheless, courts have begun examining mixed-race challenges in the wake of *Powers*, even though the defense has not always succeeded in prevailing on the issue of purposeful discrimination. *See, e.g., State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310, 1314 (1992) (Hispanic defendant raising *Batson* challenge for exclusion of black veniremember); *Brashear v. State*, 90 Md.App. 709, 715, 603 A.2d 901, 904 (1992) (white defendant challenging exclusion of black veniremembers). Based upon our reading of *Powers*, we can find no reason for not allowing this mixed-race challenge to proceed.

Therefore, we reverse the judgment of the Court of Criminal Appeals and remand this case to the trial court for a further hearing and for other proceedings, if necessary, in accordance with the directions set out above.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.