IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2002

## STATE OF TENNESSEE v. THEDDAEUS MEDFORD

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7065     Joseph H. Walker, Judge**

---

**No. W2001-02930-CCA-R3-CD  - Filed January 14, 2003**

---

The defendant, Theddaeus Medford, was convicted by a Lauderdale County jury of two counts of the delivery of cocaine and one count of the attempted delivery of cocaine. On appeal, he raises the following issues: (1) whether two peremptory challenges by the state were in violation of Batson v. Kentucky; (2) whether the evidence was sufficient to support the guilty verdicts; and (3) whether the trial court erred in admitting exhibits upon the suggestion of the court reporter after the examination of the witnesses had concluded. We vacate the judgment of the trial court and remand for a hearing on the alleged Batson violation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the appellant, Theddaeus Medford.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

These convictions arose from an undercover drug operation conducted by the Lauderdale County Sheriff's Department in October 2000. During this time period, twenty-one-year-old Kimberly Nowell was working as an undercover buyer. Prior to each drug transaction, both she and her vehicle were searched by an officer, and her vehicle was equipped with audio and video devices. Each transaction was monitored by an officer.

Nowell testified that on October 19, 2000, she was making a drug buy from Martin Edwards when the defendant approached her vehicle. She informed the defendant that she was waiting for Edwards to deliver her a "thirty piece" of crack cocaine, and the defendant showed her some crack cocaine and stated "his product was better." Nowell informed the defendant that she had already paid Edwards; therefore, the defendant kept the crack cocaine. Nowell stated the defendant wanted her to help "move his product" and gave her his pager number. The defendant was convicted of the attempted delivery of cocaine based upon this transaction.

On October 21, 2000, Nowell paged the defendant, who informed her to go to the Edwards residence. There, she met the defendant, paid him $50, and received drugs which were subsequently tested to be cocaine. The defendant was convicted of the delivery of cocaine based upon this transaction.

On October 27, 2000, Nowell again met the defendant at the Edwards residence for another drug buy. Nowell stated the defendant was "hesitant" to sell her the crack cocaine. According to Nowell, the defendant directed Edwards to sell the drugs to her; Edwards did so; and Nowell paid Edwards. As Nowell was driving off, she observed Edwards give the money to the defendant. The drugs were subsequently tested to be cocaine. The defendant was convicted of the delivery of cocaine based upon this transaction.

Tonya Medford, the defendant's wife, testified for the defendant. She stated she had never seen any sort of bill for a pager and did not know of any reason why the defendant would keep a bill secret from her. The defendant testified he did not have a pager and did not participate in the alleged drug transactions. He testified that although he saw Nowell on October 19th and October 27th, he was merely "flirtinizing" with her.


**BATSON ISSUE**

The defendant contends two peremptory challenges by the state were racially motivated and in violation of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We remand for a hearing as to the first challenge.

**A. Standard of Review**

In Batson, the United States Supreme Court held that a state's use of peremptory challenges to intentionally exclude jurors of the defendant's race violates the defendant's right to equal protection. 476 U.S. at 89. The Court upheld this principle in Powers v. Ohio, but eliminated the requirement that the defendant and the potential juror share the same race. 499 U.S. 400, 415, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

A defendant seeking to raise a Batson claim must first make a prima facie showing of purposeful discrimination against a prospective juror. Batson, 476 U.S. at 93-94. The defendant must establish that a consideration of all the relevant circumstances raises an inference of purposeful discrimination. Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 903 (Tenn.1996). Once

the defendant establishes a prima facie showing of purposeful discrimination, the burden then shifts to the state to establish a neutral basis for the challenge. Batson, 476 U.S. at 97. The state's explanation cannot be based on mere "stereotypical assumptions," but it need not rise to the level of a challenge for cause. State v. Ellison, 841 S.W.2d 824, 826 (Tenn. 1992) (citing Batson, 476 U.S. at 97).

In ruling on peremptory challenges, the trial court must give specific reasons for each of its factual findings. Woodson, 916 S.W.2d at 906. The trial court should explain why the objecting party has or has not established a prima facie showing of purposeful discrimination. If the defendant has made a prima facie showing, the court must determine whether the state gave a neutral reason and whether it finds that the challenge was the result of purposeful discrimination. State v. Carroll, 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000). The trial court's findings are to be accorded great weight and will not be set aside unless they are clearly erroneous. Woodson, 916 S.W.2d at 906.

## B. Analysis

The record reveals that the defendant is African-American. During voir dire, an African-American male juror indicated that he was related to a law enforcement officer. Furthermore, a female African-American juror indicated her church was located on the same street where the alleged drug transactions occurred.

### (1) The First Challenge

During the initial round of peremptory challenges, the state challenged the African-American male juror. The following then occurred at a bench conference:

| | |
|---|---|
| The Court: | There is an objection to the challenge -- the one challenge -- that the state has made. |
| [State]: | Your Honor, [defense counsel] directly asked if there was anybody on this jury that was related to law enforcement and actually directly asked that juror in particular and on his juror questionnaire he says that he is related to a law enforcement officer. |
| The Court: | If the Court finds that for some reason other than those reasons about [sic] *Batson*, to object to that juror, this is the first challenge and there's certainly been no pattern shown. You can always use the peremptory challenges. The Court will allow -- |
| [Defense Counsel]: | Your Honor, I would state for the record in this case that it appears that the State has |

removed a member of the African-American race on the basis that in my humble opinion would benefit the State in that she [sic] [he] indicates that she's [sic] [he's] related to law enforcement authorities which would be indicative of a good juror for the State and other than race, the fact that my client is of the same race, I see no legitimate reason for the exclusion of this prospective juror.

The Court: Anything else? (No affirmative response) Okay. Thank you.

As stated, a defendant must first establish a prima facie case of purposeful discrimination. Batson, 476 U.S. at 93-94; Woodson, 916 S.W.2d at 902. In making this determination, all relevant circumstances should be considered, including any pattern of strikes, questions and statements during voir dire, and the recognized inference that peremptory challenges create an atmosphere which allows discrimination. Woodson, 916 S.W.2d at 904. Although a "pattern" of strikes against a racial group can give rise to an inference of discrimination, it is only one way to establish a prima facie case. Ellison, 841 S.W.2d 827 (citing Batson, 476 U.S. at 97). Thus, the exclusion of only one minority juror can constitute a prima facie case. Id. In other words, the defendant does not necessarily have to establish a pattern of strikes to establish a prima facie case. The defendant may also rely upon the prosecutor's statements and any other relevant circumstances. Batson, 476 U.S. at 97; Ellison, 841 S.W.2d 826-27.

The trial court implicitly found that the defendant had not made a prima facie showing of purposeful discrimination. We conclude the trial court erred in finding the defendant failed to establish a prima facie case because this was the "first challenge," and the defendant had not shown a "pattern" of discriminatory challenges.

Here, the defendant and the excluded juror were of the same minority race. The state offered an explanation for the challenge prior to the trial court's request for an explanation. On its face, the explanation is race-neutral but, as the defendant argued, is contrary to the usual practice of the state which ordinarily would prefer a juror related to law enforcement authorities. The trial court made no finding as to the credibility of the state's explanation, precluding such a finding by its conclusion that no prima facie case had been established by the defendant.

We recognize that the state's challenge may well have been race-neutral, and the state legitimately did not want a juror related to law enforcement authorities. Further, the state may have had additional reasons for the challenge that were not advanced by the state due to the ruling of the trial court. Nevertheless, we conclude the defendant established a prima facie case, thus requiring the trial court to determine whether the state's exclusion of the juror was indeed race-neutral. The proper remedy is to remand to the trial court for a hearing on this issue pursuant to the procedure set forth in Ellison. See 841 S.W.2d at 826. If the trial court finds for the state, it shall reinstate the judgment. If it finds for the defendant, the defendant shall be granted a new trial.

## (2) The Second Challenge

During the second round of peremptory challenges, the state challenged the African-American female juror. Upon objection by the defendant, the prosecutor stated the juror had maintained "constant eye contact with the defendant," lived and attended church near the location of the drug transactions, and must know people involved in the case. Defense counsel argued the reasons advanced by the prosecutor were not legitimate. The trial court stated it accepted the reasons advanced by the prosecutor and found the challenge to be race-neutral.

Unlike the prior challenge, we assume the trial court found a prima facie showing had been established because it called upon the prosecutor to respond. The prosecutor gave a race-neutral explanation, which was expressly accepted by the trial court. We note that "[w]hat <u>Batson</u> means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." <u>Carroll</u>, 34 S.W.3d at 320 (quoting <u>Purkett v. Elem</u>, 514 U.S. 765, 767, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995)) (upholding a challenge because a juror was non-assertive and failed to make eye contact). We conclude the trial court's finding was not clearly erroneous with regard to this challenge. Accordingly, we are unable to conclude the trial court erred with regard to this challenge.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence is legally insufficient to support his convictions. Again, we respectfully disagree.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); <u>State v. Abrams</u>, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Brewer</u>, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

The essence of the defendant's argument relating to sufficiency is that the undercover operative was not credible, and there is a lack of other proof to support the convictions. However, as stated, the weight and credibility of the testimony of the witnesses are matters to be decided by the jury, not this court. <u>Sheffield</u>, 676 S.W.2d at 547. The undercover operative testified that on October 19, 2000, the defendant showed her crack cocaine which he endeavored to sell and deliver to her. She testified that on October 21, 2000, the defendant personally sold and delivered to her crack cocaine. She further testified that on October 27, 2000, the defendant directed Edwards to sell her crack cocaine; she gave Edwards the money; Edwards delivered the cocaine to her; and she then observed Edwards give the money to the defendant. It was the jury's prerogative to believe this testimony and reject the defendant's denial of his participation. This issue lacks merit.

**EXHIBITS**

Finally, the defendant contends the trial court erred in admitting recordings of the drug transactions as exhibits upon suggestion of the court reporter after the testimony of the authenticating witnesses had ended. This issue lacks merit.

Both the undercover agent and the officer who monitored the drug transactions testified concerning the video and/or audio recordings of the transactions, which were played to the jury. It appears from the record that the state neglected to actually enter the recordings as formal exhibits during the testimony of the witnesses. It further appears that upon the court reporter bringing this to the trial judge's attention at the conclusion of the officer's testimony, the trial judge indicated that the tapes would be marked as Exhibits 4, 5 and 6. Defense counsel objected, noting that the state had neglected to enter the tapes as exhibits, and the court reporter and trial court were assisting the prosecution. The trial judge explained that the tapes had been played to the jury, and he wanted to make certain that the record was complete for appellate review.[1]

The admissibility of evidence is generally within the broad discretion of the trial court, and this court will not interfere with its decision absent an abuse of discretion. State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999). We envision no abuse of discretion by the trial court in correcting this oversight.

**CONCLUSION**

Based upon our review of the record, we vacate the judgment of the trial court and remand for further proceedings with regard to the Batson issue on the state's first peremptory challenge.

_____
JOE G. RILEY, JUDGE

---

[1]We note that Exhibits 4, 5 and 6 are audiotapes. No videotapes are in the appellate record.