IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 2, 2004

## STATE OF TENNESSEE v. THADDAEUS MEDFORD

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7065    Joseph H. Walker, III, Judge**

_____

**No. W2003-01544-CCA-R3-CD  - Filed June 29, 2004**

_____

The Defendant, Thaddeaus Medford, was convicted of three counts involving the delivery and attempted delivery of cocaine.  In his first appeal, the Defendant contended, in part, that the State used a peremptory challenge to exclude a potential juror based on race.  We remanded the case for the trial court to determine whether the State's challenge was based upon a racially-neutral reason.  On remand, the trial court determined that the State's challenge was based upon a racially-neutral reason, and the Defendant appeals, contending that this finding by the trial court is in error.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which, DAVID H. WELLES and DAVID G. HAYES, JJ., joined

Clifford K. McGowan, Jr., Waverly, Tennessee (on appeal), Gary F. Antrican and Julie K. Pillow, Somerville, Tennessee (at trial), for the appellant Thaddeaus Medford.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; Tracey Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises out of the Defendant's conviction for three counts involving the delivery and attempted delivery of cocaine.  In the Defendant's first appeal, he contended that the State improperly excluded a juror of his same race, Corey Hannah, in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  This Court remanded the case for a hearing on the issue, stating:

-1-

**A. Standard of Review**

In Batson, the United States Supreme Court held that a state's use of peremptory challenges to intentionally exclude jurors of the defendant's race violates the defendant's right to equal protection. 476 U.S. at 89. . . .

A defendant seeking to raise a Batson claim must first make a prima facie showing of purposeful discrimination against a prospective juror. Batson, 476 U.S. at 93-94. The defendant must establish that a consideration of all the relevant circumstances raises an inference of purposeful discrimination. Woodson v. Porter Brown Limestorne Co., 916 S.W.2d 896, 903 (Tenn. 1996). Once the defendant establishes a prima facie showing of purposeful discrimination, the burden then shifts to the state to establish a neutral basis for the challenge. Batson, 476 U.S. at 97. The state's explanation cannot be based on mere "stereotypical assumptions," but it need not rise to the level of a challenge for cause. State v. Ellison, 841 S.W.2d 824, 826 (Tenn. 1992) (citing Batson, 476 U.S. at 97).

In ruling on peremptory challenges, the trial court must give specific reasons for each of its factual findings. Woodson 916 S.W.2d at 906. The trial court should explain why the objecting party has or has not established a prima facie showing of purposeful discrimination. If the defendant has made a prima facie showing the court must determine whether the state gave a neutral reason and whether it finds that the challenge was the result of purposeful discrimination. State v. Carroll, 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000). The trial court's findings are to be accorded great weight and will not be set aside unless they are clearly erroneous. Woodson, 916 S.W.2d at 916.

**B. Analysis**

The record reveals that the defendant is African-American. During voir dire, an African-American male juror indicated that he was related to a law enforcement officer. . . .

During the initial round of peremptory challenges, the state challenged the African-American male juror. The following then occurred at a bench conference:

> The Court: There is an objection to the challenge—the one challenge—that the state has made.
> [State]: [y]our Honor, [defense counsel] directly asked if there was anybody on this jury that was related to law enforcement and actually directly asked that juror in particular and on his juror

questionnaire he says that he is related to a law enforcement officer.

The Court: If the Court finds that for some reason other than those reasons about [sic] Batson, to object to that juror, this is the first challenge and there's certainly been no pattern shown. You can always use the peremptory challenges. The court will allow—

[Defense Counsel]: Your Honor, I would state for the record in this case that it appears that the State has removed a member of the African-American race on the basis that in my humble opinion would benefit the State in that [he] indicates that [he's] related to law enforcement authorities which would be indicative of a good juror for the State and other than race, the fact that my client is of the same race, I see no legitimate reason for the exclusion of this prospective juror.

The Court: Anything else? (No affirmative response) Okay. Thank you.

As stated, a defendant must first establish a prima facie case of purposeful discrimination. Batson, 476 U.S. at 93-94; Woodson, 916 S.W.2d at 902. In making this determination, all relevant circumstances should be considered, including any pattern of strikes, questions and statements during voir dire, and the recognized inference that peremptory challenges create an atmosphere which allows discrimination. Woodson, 916 S.W.2d at 904. Although a "pattern" of strikes against a racial group can give rise to an inference of discrimination, it is only one way to establish a prima facie case. Ellison, 841 S.W.2d at 827 (citing, Batson, 476 U.S. at 97). Thus, the exclusion of only one minority juror can constitute a prima facie case. Id. In other words, the defendant does not necessarily have to establish a pattern of strikes to establish a prima facie case. The defendant may also rely upon the prosecutor's statements and any other relevant circumstances. Batson, 476 U.S. at 97; Ellison, 841 S.W.2d 826-27.

The trial court implicitly found that the defendant had not made a prima facie showing of purposeful discrimination. We conclude the trial court erred in finding the defendant failed to establish a prima facie case because this was the "first challenge," and the defendant had not shown a "pattern" of discriminatory challenges.

Here, the defendant and the excluded juror were of the same minority race. The state offered an explanation for the challenge prior to the trial court's request for an explanation. On its face, the explanation is race-neutral but, as the defendant argued, is contrary to the usual practice of the state which ordinarily would prefer a juror related to law enforcement authorities. The trial court made no finding as to the credibility of the state's explanation, precluding such a

-3-

finding by its conclusion that no prima facie case had been established by the defendant.

We recognize that the state's challenge may well have been race-neutral, and the state legitimately did not want a juror related to law enforcement authorities. Further, the state may have had additional reasons for the challenge that were not advanced by the state due to the ruling of the trial court. Nevertheless, we conclude that the defendant established a prima facie case, thus requiring the trial court to determine whether the state's exclusion of the juror was indeed race-neutral. The proper remedy is to remand to the trial court for a hearing on the is issue pursuant to the procedure set forth in Ellison. See 841 S.W.2d at 826. If the trial court finds for the state, it shall reinstate the judgment. If it finds for the defendant, the defendant shall be granted a new trial.

State v. Theddaeus[1] Medford, No. W2001-02930-CCA-R3-CD, 2003 WL 141049, at *2-3 (Tenn. Crim. App., at Jackson, Jan. 14, 2003).

On remand, the trial court held a hearing to determine whether the State excluded the prospective juror for a racially-neutral reason. At the hearing the State told the court:

[The State]: Your Honor, the reason behind using Corey Hannah as a peremptory challenge for the State was that we didn't feel that Corey Hannah was going to be an individual that would be trustworthy enough to be on this jury pool because when [defense counsel] . . . asked if there had been any of these individuals that were related to law enforcement, that he, in fact, did not respond to [defense counsel's] question. On his questionnaire he puts, on question number 26, that, in fact, that he was related to Officer Rita Burnett.

. . . .

[The State]: Your Honor, after not being truthful with [defense counsel] and not responding to his question of whether or not he was, in fact, related to any law-enforcement officer, another issue arose for the State to consider who that particular officer was.

That particular officer, Rita Burnett, being on the Ripley Police Department, is also related to Terrance Burnett, who has been convicted of life without parole, two counts of felony first-degree murder, two counts of attempted first-degree murder, and especially aggravated burglary. She is also related to Darren Burnett, who has been convicted of a felony failure to appear and also federal drug convictions. And then the third person that she was related to was Jeffrey

<hr>

[1]We note that the Defendant's name is spelled in two ways; "Thaddaeus" and "Theddaeus."

Burnett, all three of these being her sons. And Jeffrey Burnett was killed in a drive-by shooting in the adjoining county, in Dyer County, that was related to drug activity on his part.

We did not feel that this officer would be someone that we want one of the jurors to be related to that could be forthcoming as a juror and vote in our favor, and that is the reason that we excluded this juror from the jury pool.

The Defendant's counsel responded that Corey Hannah was excluded based solely upon race. The trial court found "the State had a race-neutral basis for the challeng[e], that being credibility, and the conviction is reinstated." The trial court then suspended the balance of the Defendant's sentence, giving him credit for time that he already served. The trial court combined the balance of the sentence remaining with a sentence that the Defendant was currently serving for a different conviction.

As stated above, the trial court's findings are to be accorded great weight and will not be set aside unless they are clearly erroneous. Woodson, 916 S.W.2d at 916. There is no proof in the record upon which we can conclude that the trial court's findings in this case are clearly erroneous.

Therefore, in accordance with the foregoing, we conclude that the Defendant is not entitled to relief, and we AFFIRM the judgment of the trial court.

_____
JUDGE ROBERT W. WEDEMEYER