IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

APRIL 1997 SESSION

FILED

June 24, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | ) | C.C.A. No. 03C01-9610-CR-00383 |
| | ) | |
| Appellee, | ) | MONROE COUNTY |
| | ) | |
| **VS.** | ) | **HON. MAYO MASHBURN, JUDGE** |
| | ) | |
| **MATTHEW L. MOATES,** | ) | (Agg. Robbery) |
| | ) | |
| Appellant. | ) | |

FOR THE APPELLANT:

**W. HOLT SMITH**
209 Tellico Street North
Madisonville, TN 37354

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MICHAEL J. FAHEY, II**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**JERRY N. ESTES**
District Attorney General

**RICHARD NEWMAN**
Assistant District Attorney General
P.O. Box 647
Athens, TN 37303

**OPINION FILED:** _____

**AFFIRMED**

**CHRIS CRAFT,**
**SPECIAL JUDGE**

**OPINION**

Defendant, Matthew L. Moates, appeals as of right from a jury conviction for aggravated robbery. Moates presents four issues for our review: 1) whether the evidence was sufficient to sustain the conviction; 2) whether the trial judge erred in failing to institute procedures mandated by Batson v. Kentucky and improperly allowed the State to exclude the only black member of the jury venire; 3) whether the State improperly withheld from Defendant a plea bargain agreement with a state witness; and 4) whether a photo line-up was unduly suggestive and should have been suppressed. We affirm the judgment of the trial court.

**FACTS**

The facts of this case involve the armed robbery of a Phillips 66 convenience store in Sweetwater, Monroe County, Tennessee. Kay Lowe testified at trial that she was working at the store the night of the robbery, and her nephew, Tim West, was staying with her. At around 5:00 am, a man entered the store ostensibly to buy a carton of cigarettes. As Ms. Lowe rang up the sale, he produced a gun and said, "Now I want all your money." After she gave him the cigarettes and cash drawer he ordered them both to lie face down on the floor. At first, Tim West thought he was joking, but he told him, "Get over here. This is no joke," and both obeyed. They waited on the floor until another customer came in, and then called the police. Both victims described the robber to the police as a white male with long dark hair and a moustache, a red checkered shirt and possibly blue jeans. They both identified the defendant as the robber in a photo line-up shown them three months later, and also in court at trial. Ms. Lowe also testified that some time later she saw someone that looked like the robber at the local Krystal drive-in window, and called the police, but that nothing came of it.

Mary Ann Clingan testified that during the time of the robbery, while her husband was serving time in jail, the defendant was staying with her. The morning of the robbery she and the defendant were returning to Bradley County from Sevierville when she pulled off the highway onto the Phillips 66 store lot, and gave the defendant

2

two dollars to get her some cigarettes. She parked around the side of the store and could not see into the store. The defendant was wearing a red, multicolored flannel shirt and blue jeans. After about five minutes, he came running out of the store with a black gun in his hand, and later showed her about $150 which he said he got at the store. They then continued on to her house. She claimed she did not call the police because she was afraid for her children. At the time of the trial, she was under house arrest, charged with being an accessory after the fact to the robbery.

The defense called two witnesses. One testified that Ms. Lowe told her the robber was six feet tall, had long black hair, was tan, and that she had seen him at a local restaurant some time after the robbery. The other witness testified that the morning of the robbery the police asked him to go down to the station, took his picture, and questioned him about the robbery, stating they were looking for "a local guy."

## SUFFICIENCY OF THE EVIDENCE

The Defendant contends the evidence was insufficient to prove guilt beyond a reasonable doubt. In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. Id.; State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307(1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996).

3

The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

Both victims in this case identified the defendant twice as the man who robbed them at gunpoint of money and cigarettes, first in a photo line-up and then in court during the trial. The officer who conducted the line-up testified the defendant's picture was identified "almost immediately." A witness who was living with the defendant at the time testified she drove the defendant to and from the store the morning of the robbery, that he was dressed in clothes matching the description of the robber, came running out of the store with a gun in his hand, and had $150 that he later told her he had taken from the store. Defense proof tending to suggest that the robber may have been a local resident was obviously rejected by the jury in the face of the state's proof. The evidence is more than sufficient to support the conviction for aggravated robbery. This issue is without merit.

THE BATSON ISSUE

Next, the defendant argues that the trial court erred by permitting the state to exercise a peremptory challenge to dismiss a female black juror in violation of the rule in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986). In Batson, the United States Supreme Court held that the prosecutor's use of peremptory challenges to intentionally exclude jurors of the defendant's race violated his right to equal protection under the fourteenth amendment to the U.S. Constitution. In Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364 (1991), the Supreme Court upheld the principles in Batson but eliminated the requirement that the defendant and the wrongfully excluded juror be of the same race in order for there to be an equal protection claim. Therefore even though the Defendant is a white male, he can still challenge the exclusion of a black female from the jury venire, if he can show she is excluded on the basis of race. See State v. Ellison, 841 S.W.2d 824, 826 (Tenn. 1992).

During jury selection, a female black juror was peremptorily challenged by the State, without objection. The jury was sworn, opening statements were made by the

4

State and the Defendant, and then outside the presence of the jury the Defendant's attorney asked the State to show a "non-discriminatory reason for having excused this juror." The prosecutor responded:

> The reason that she was excused, your Honor, was because of her address. It's a known drug area. I asked the police officer. He said that because of the area that she lived in, that it was a drug area, and he recommended that we excuse her. I concurred in that.

The trial judge noted the defense objection for the record, without ruling on whether or not he found the reason was "non-discriminatory," and the first witness was called.

The Defendant now objects to the excusal of the black juror. This issue was waived by Defendant when he failed to object at the time of the exercise of the peremptory challenge, or at least prior to the swearing of the jury. "The appropriate time for [a Batson objection] is prior to the acceptance and swearing in of the jury. After a party has assured the court that the jury as impaneled is acceptable, that party will not be heard to complain of the makeup of the jury panel. This issue, based upon a motion not timely made, is overruled." State v. Peck, 719 S.W.2d 553, 555 (Tenn. Crim. App. 1986). See also T.R.A.P. 36(a). Furthermore, even if this issue had not been waived, this Court finds it to be without merit. The trial judge, in his written order overruling the Motion for New Trial, found that

> [the juror] was peremptorily challenged by the state. Following [the juror's] challenge and excusal, another juror was seated and accepted by the State and Defendant. Following this, two alternate jurors were accepted by the State and Defendant. Thereafter, the indictment was read and both counsel made opening statements, following which a recess was declared.
> During the recess, Defendant's attorney, for the first time, raised an objection to the State's peremptory challenge of [the juror]. State's counsel responded that his challenge of [the juror] was based upon the prosecuting officer advising him that [the juror's] address was in a known drug area of the city. No mention was made as to whether said area was predominately black.
> Based on the State's representation, it is the Court's finding that the State's explanation did not raise the specter of being racially based or motivated, but instead was racially neutral.

The trial judge accepted the explanation of the State. We cannot substitute our judgment for that of the trial court or declare error absent a finding that the trial judge abused his discretion. State v. Melson, 638 S.W.2d 342, 347 (Tenn.1982). The reason given by the State was sufficient, and we find no abuse of discretion.

> The explanation need not be persuasive nor plausible. So long as discrimination was not inherent in the explanation, the reason will be accepted as race neutral. What is meant [in Batson] by a 'legitimate reason' is not a

5

reason that makes sense, but a reason that does not deny equal protection. Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896 (Tenn. 1996) , citing Purkett v. Elem, 514 U.S. at ___, 115 S. Ct. at 1771(1995), and Hernandez v. New York, 500 U.S. 352, 359, 111 S. Ct. 1859 (1991).

**FAILURE TO DISCLOSE PLEA BARGAIN AGREEMENT**

The defendant next complains that the State had reached a plea bargain agreement with Mary Ann Clingan, offering her a deal in exchange for her testimony, but did not disclose the terms of the agreement to Defendant so it could be used against her in cross-examination to show bias. At a pretrial hearing, Defendant's attorney produced an affidavit filed by Wayne Carter, Ms. Clingan's assistant Public Defender on charges in Bradley County, which stated that "[a]s part of the consideration for the agreement the government has offered Mary Clingan (and to which she has tentatively accepted), Mary Clingan has agreed to testify truthfully in open court concerning several matters to which she may have been involved.... One of the matters to which she may be called to testify concerns the alleged robbery of a gas station in Monroe County, Tennessee." Another affidavit from the Defendant's former assistant Public Defender, Thomas Kimball, in support of his motion to withdraw, stated that Ms. Clingan's attorney told him that she was never charged in Defendant's case because of the plea bargain. The State insisted at the hearing that it knew of no such bargain. The trial judge ruled that he had no reason to question the State's integrity, and refused to order them to furnish the Defendant something they didn't know anything about.

Our Supreme Court has held in State v. Smith, 893 S.W.2d 908, 924 (Tenn. 1994) that an accused has a right to explore on cross-examination promises of leniency to a prosecution witness to show a motive for testifying falsely for the State, and that undue restriction of this right may sometimes violate a defendant's right to confrontation. See also Delaware v. VanArsdall, 475 U.S. 673, 106 S.Ct. 1431 (1986), and Cohen, Paine and Sheppeard, Tennessee Law of Evidence, § 616.3 (2nd ed. 1990). However, there is no proof in the record, other than the affidavits, that there

ever was such a plea bargain. Ms. Clingan's attorney was not called as a witness at the hearing or at the trial. The duty of the State to disclose under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), does not extend to information that the defense already possesses or is able to obtain, or to information not in the possession or control of the prosecution. State v. Wooden, 898 S.W.2d 752, 755 (Tenn. Crim. App. 1994). Furthermore, the trial judge did not restrict the defense in any way from exploring the bias of Ms. Clingan. She was thoroughly cross-examined by Defendant's attorney about a possible plea bargain agreement, and was confronted with the above-mentioned affidavits, which were read to her in front of the jury. She denied under oath the existence of any agreement, and insisted that she had been charged with Accessory after the Fact to the Defendant's robbery, which charge was still pending at the time of the trial. In support of her testimony is a copy in the record of Ms. Clingan's judgment of conviction for Accessory after the Fact, offered as an exhibit at Defendant's sentencing hearing, for which Ms. Clingan received a one year suspended sentence. There being no proof the State has done anything improper, or that the Defendant was at all prejudiced in its cross-examination of this witness, this issue has no merit.

## SUGGESTIVENESS OF THE PHOTOGRAPHIC LINE-UP

The Defendant moved to suppress the photographic line-up given the two victims of the robbery by Officer Long, on the basis that in his opinion the Defendant's face appeared larger in his photo than in the other five photos, which might have been unduly suggestive. After a pretrial hearing on the motion, the trial judge found "absolutely nothing suggestive about that photographic line-up," and denied the motion to suppress. This Court has likewise examined the photo line-up, and finds that although two photos, one being that of Defendant, were apparently taken at a closer distance than the other four, making the faces of those two subjects appear slightly larger, all six photos, showing white males with moustaches and long dark hair, are remarkably similar in appearance. The line-up does not appear to suggest any one photo over another. The difference in facial size was explained by Officer Long in the

suppression hearing as a consequence of his department now having to use a new hand-held camera, instead of the old one that was mounted on a stand.

A trial court's finding that the identification procedure was not suggestive is conclusive on appeal unless the evidence preponderates against the judgment. State v. Davis, 872 S.W.2d 950, 955 (Tenn. Crim. App. 1993). Due process is violated only if, under the totality of the circumstances, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967), the identification procedure is found to be so suggestive as to give rise to "a very substantial likelihood of irreparable misidentification," Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967 (1968), which was not the case with the line-up used here. The trial court did not err in denying the motion to suppress.

For the above reasons the judgment of the trial court is AFFIRMED.

_____
_____CHRIS CRAFT, SPECIAL JUDGE

CONCUR:

_____
JERRY L. SMITH, JUDGE

_____
JOE G. RILEY, JUDGE

8