IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 15, 2001 Session

## STATE OF TENNESSEE v. JERRY W. JORDAN

**Appeal from the Criminal Court for Davidson County**
**No. 96-C-1641     Seth Norman, Judge**

---

**No. M1999-00813-CCA-R3-CD - Filed October 11, 2001**

---

The Defendant, Jerry W. Jordan, was convicted of second degree murder in the Criminal Court of Davidson County. After a sentencing hearing, the trial court sentenced the Defendant as a Range I offender to twenty-two years of imprisonment. In his appeal as of right pursuant to Rule 3(b) of the Tennessee Rules of Appellate Procedure, the Defendant argues that (1) the evidence presented at trial was insufficient to support a verdict of guilt beyond a reasonable doubt, (2) the Defendant's Due Process and Equal Protection rights were violated when the State excluded four African-American jurors, (3) the trial court erred in failing to instruct the jury as to reckless homicide as a lesser-included offense, and (4) the trial court erred in sentencing the Defendant to twenty-two years. We reverse the Defendant's second degree murder conviction due to the trial court's failure to instruct the jury regarding reckless homicide as a lesser-included offense to first degree murder.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Case Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., JJ., joined. JOE G. RILEY, J., filed an opinion concurring in part and dissenting in part.

Paul J. Bruno, Nashville, Tennessee, for the appellant, Jerry W. Jordan.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 17, 1996, Onie Benson, the victim, and her fiancé, Leotha Williams, drove from Memphis to Nashville for the purpose of prostituting the victim in the Murfreesboro Road area. Mr. Williams testified that this was a regular practice of the couple, and that the victim always insisted on the use of condoms while performing sexual acts for money. Mr. Williams further testified that

around ten o'clock that night, the victim's services were retained by a man in a red sport-utility vehicle. Mr. Williams was able to observe the driver's face and later assisted the police in creating a composite sketch of the suspect. As the evening passed and the victim did not return to the motel where she and Mr. Williams were staying, he became concerned and contacted the victim's sister and eventually the police.

Metro Police Officer Erin Dwyer responded to Mr. Williams' missing person report at the Budget Lodge on Plus Park Boulevard. Upon arriving at the scene, Officer Dwyer was approached by a group of children who informed him that there was a body in the creek behind the motel. Officer Dwyer then observed the victim at the bottom of a deep ravine which separated the motel from the parking lot of an office building on Plus Park Boulevard. Officer Dwyer then began securing the crime scene.

Metro Police Officer Raymond Rader, Jr. and Detective Mike Rolland testified concerning the trail of blood left by the victim, which began five to ten feet from the edge of the parking lot and continued, sporadically, through the ravine to the victim's body. Detective Rolland also testified that a steep embankment at the edge of the parking lot led to the bottom of the ravine.

Detective Stan Marlar testified that he inspected the parking lot of the office building next to the ravine where the victim was found. Several wrapped condoms, a pair of shoes, clothing, lipstick, a pair of women's underwear, and two forty-five caliber shell casings were found at the edge of the parking lot near a guardrail. Red paint chips were also found on the guardrail in the parking lot.

Around two o'clock in the morning on May 19, Detectives Marlar and Rolland returned to the parking lot to continue their investigation. Ten minutes after arriving, the detectives observed the Defendant enter the parking lot driving a red car. The Defendant's appearance was similar to the composite drawing based on the description given by Mr. Williams. When questioned, the Defendant stated that he was looking for a place to urinate. While the Defendant was urinating, Detective Marlar noticed a forty-five caliber handgun protruding from under the passenger's seat of the Defendant's car. Based on the description obtained from Mr. Williams and Mr. Williams' statement that the victim was last seen in a red automobile, the paint chips found at the scene, the shell casings found in the parking lot, and the gun seen in the Defendant's possession, the Defendant was arrested. Before booking at police headquarters, the Defendant entered a restroom and removed several long hair extensions from his hair.

Dr. John Gerber testified that the victim died as a result of a gunshot wound. The victim bled to death when the bullet entered her right hip, lacerated a vein, and exited near her genitals. The victim was shot from a distance of more than two feet and the bullet entered her body at a downward angle.

The shell casings found at the scene were later determined to have been ejected from the Defendant's gun. Tennessee Bureau of Investigation firearms expert Steve Scott testified that the

gun taken from the Defendant was in good working order, and did not have a "sensitive" trigger. Mr. Scott stated that the Defendant's gun required seven and one quarter pounds of pressure to pull the trigger, while a "hair trigger" would require less than one pound. Sandra Evans, another T.B.I. expert, testified that the paint chips found on the guardrail and the fragmented taillight lens found near the guardrail matched the Defendant's sport-utility vehicle.[1]

The Defendant testified that, on the night of the murder, he saw the victim on Murfreesboro Road and picked her up in order to have sex with her. The victim then directed him to the parking lot beyond an office building on Plus Park Boulevard. While parking his car, the Defendant stated that he collided with the guardrail. The Defendant then exited the vehicle and walked around to the passenger's door where the victim had undressed from the waist down. The Defendant testified that the victim did not request that he wear a condom. After having sex, the victim asked for her money and the Defendant informed her that he had none. The Defendant then stated that the victim began screaming and cursing. The Defendant threw the victim's clothes and belongings onto the ground and locked the passenger side door. After circling the car and removing his pistol, the Defendant then fired one shot into the ground in order to scare the victim. The Defendant testified that he could not see the victim when he fired the pistol because it was dark in the parking lot and the vegetation behind the guardrail was thick and overgrown. The Defendant also stated that he was unaware of the dramatic drop-off into the ravine on the other side of the guardrail. The Defendant testified that he never intended to kill the victim and only fired the pistol into the ground in order to scare her away. The Defendant said that he returned to the parking lot the next evening to see if the victim was alright. The Defendant also testified that he had been in the military and had received some firearms training.

The Defendant was found guilty of second degree murder. At the sentencing hearing, the trial court relied on the Defendant's previous criminal history, the Defendant's use of a firearm during the commission of the offense, and the Defendant having previously been on parole and having that parole revoked to set the Defendant's sentence at twenty-two years, two years above the presumptive sentence. The trial court found no mitigating factors applied.

## I. SUFFICIENCY OF THE EVIDENCE

The Defendant first argues that the evidence produced by the State at trial is insufficient to support his second degree murder conviction. The Defendant specifically contends that the evidence presented at trial does not show beyond a reasonable doubt that he knew that the bullet fired from his gun would strike and kill the victim.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support

---

[1]The Defendant was first discovered by Detectives Marlar and Rolland driving a red car, but was later found to be the owner of a red sport-utility vehicle with a recently damaged taillight. The Defendant's girlfriend further testified that the Defendant called her from jail shortly after his arrest and asked her to take his sport-utility vehicle to his father's home.

the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The evidence presented to the jury showed that the Defendant fired a forty-five caliber handgun at or in the direction of the victim. The half-naked victim was apparently shot while running away from the Defendant. The Defendant testified to firing only once to scare the victim, however, two shell casings were found five to ten feet from where the victim's blood trail began. Additionally, the evidence showed that the Defendant picked up the victim, a prostitute, in order to have sex with her though he had no money to pay her.

Criminal intent is a matter to be determined by the jury after a consideration of all the facts and circumstances. State v. Holland, 860 S.W.2d 53, 59 (Tenn.Crim.App. 1993). This case presents a classic jury question because the jury had to weigh the credibility of the defendant against the State's evidence and determine the degree of homicide established by the proof. Second degree murder is defined as a "knowing" killing of another. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-106(a)(20). Though the evidence would support a finding of recklessness or, perhaps, negligence, we cannot say as a matter of law that, considered in the light most favorable to the State, there is insufficient evidence to support the jury's verdict of second degree murder. Accordingly, the Defendant's challenge to the sufficiency of the evidence is without merit.

## II. BATSON ISSUE

The Defendant contends that the State excluded four African American jurors with its peremptory challenges in violation of Article I, section 8 of the Tennessee Constitution and the

Fourteenth Amendment to the United States Constitution. Under the authority of <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), he urges reversal of his conviction. Although we are reversing the Defendant's conviction on other grounds, we will address this issue.

In the present case, the following occurred during voir dire:

[Defense Counsel]:   Your honor, simply as a matter of record I am not real familiar with the proceedings, but I want to note an objection, that the State has struck four black potential jurors in a row. And I don't believe – I don't know if they have struck any white ones, but I need to lodge that objection right now.

The Court:   General, do you want to respond?
[State Counsel]:   I have no response.
The Court:   Alright.
[Defense Counsel]:   Thank you.

To invoke the protections of <u>Batson</u>, a defendant must establish a prima facie case that a juror is being challenged on the basis of race or gender. <u>Batson</u>, 476 U.S. at 94, 106 S.Ct. at 1721; <u>Purkett v. Elem</u>, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770-71, 131 L.Ed.2d 834 (1995); <u>State v. Jones</u>, 789 S.W.2d 545, 548 (Tenn.1990). Once a defendant has presented a prima facie case, the trial court shall require the State to give a race-neutral reason for the challenge. <u>Batson</u>, 476 U.S. at 94, 106 S.Ct. at 1721; <u>Purkett</u>, 514 U.S. at 767, 115 S.Ct. at 1770-71; <u>see also</u> <u>State v. Bell</u>, 759 S.W.2d 651, 653. "The race or gender neutral explanation need not be persuasive, or even plausible . . . . Unless a discriminatory intent is inherent in the [proponent's] explanation, the reason offered will be deemed race neutral." <u>Purkett</u>, 514 U.S. at 767, 115 S.Ct. at 1770-71. If a race or gender neutral explanation is given, the court must then determine, given all the circumstances, whether the defendant has established purposeful discrimination. <u>Batson</u>, 476 U.S. at 96-98, 106 S.Ct. at 1723-24; <u>see also</u> <u>Purkett</u>, 514 U.S. at 767, 115 S.Ct. at 1770-71.

Although a trial court must accept a facially race-neutral explanation for purposes of determining whether the proponent has satisfied his burden of production, this does not mean that the Court is bound to believe the explanation in making its determination. In other words, while the court may find that a proffered explanation is race-neutral, the court is not required, in the final analysis, to find that the proffered explanation was the actual reason for striking the juror. If the court determines that a race or gender based motive produced the challenge, the juror may not be excluded. <u>Woodson v. Porter Brown Limestone Co., Inc.</u>, 916 S.W.2d 896, 903 (1996).

In making its determination, the trial court must look to the totality of the circumstances, for rarely will a party admit that its purpose in striking the juror was discriminatory. Accordingly, the trial court may infer discriminatory intent from circumstantial evidence. "The fact finder's disbelief of the reasons put forth by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination, and . . . no additional proof of discrimination is required." <u>St. Mary's Honor Center</u>

v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).  Additionally, the court may consider whether similarly situated members of another race were seated on the jury or whether the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual.  The trial court may also consider the demeanor of the attorney who exercises the challenge which is often the best evidence of the credibility of his or her proffered explanations.  See Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 1868-69, 114 L.Ed.2d 395 (1991).

Because a trial record alone cannot provide a legitimate basis from which to substitute an appellate court's opinion for a trial court's findings, the trial court must carefully articulate its findings on the record.  See State v. Smith, 893 S.W.2d 908, 914 (Tenn.1994) (citing State v. Ellison, 841 S.W.2d 824, 827 (Tenn.1992)), cert. denied, 516 U.S. 829, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995).  The trial court has the opportunity to observe the demeanor of both prospective jurors and counsel, and accordingly, evaluate their credibility.  Smith, 893 S.W.2d at 914.  On appeal, the trial court's findings are to be accorded great deference and are not to be set aside by this court unless clearly erroneous.  See Woodson, 916 S.W.2d at 906.

The trial judge made no finding on the threshold issue of whether the Defendant had established a prima facie case of purposeful discrimination in selection of the petit jury.  This is a function relegated to the trial judge under Batson.  Based on the record, it is impossible to tell whether the trial judge found that the Defendant had established a prima facie case, thus requiring a race neutral explanation from the State.  Ordinarily, this court could infer the presence of a prima facie case of a Batson violation from the trial judge's request for a response from the State.  Woodson, 916 S.W.2d 896, 905 (inferring a prima facie case from the trial court's request for a response from the State).  However, it is impossible to infer such a finding from the sparse record in this case because the State's attorney gave no explanation for his use of the peremptory strikes, yet the objection was seemingly overruled.

Consequently, but for our reversal on other grounds, we would remand this cause for a further hearing to determine, under the standards of Batson and based upon all relevant circumstances and evidence at the original trial, whether there was purposeful racial discrimination in the State's exercise of its peremptory challenges.  See Ellison v. State, 841 S.W.2d 824, 826 (Tenn. 1992)( holding that the proper remedy for an alleged Batson violation is to remand to the trial court for a limited hearing on the alleged violation).  The Defendant would be entitled to be given the opportunity to demonstrate a prima facie case.  Id.  If the trial court determines that he has failed in this endeavor, that would conclude the matter except for a written finding by the trial judge.  If the trial court finds that a prima facie case of discriminatory practice has been established, the State will be given an opportunity to explain its reasons for the racial exclusion.  Id.; see also, State v. Bell, 745 S.W.2d 858, 867 (Tenn. 1988)(upon remand the State must be given an opportunity to explain the reason for the juror's exclusion).  The judge would then determine if the Defendant has established purposeful discrimination.  In either event the trial court should make written findings to be filed with the transcript of the hearing and then transmitted to this Court.

Because the core issue is the prosecutor's discriminatory intent, or lack thereof, the trial court's finding "largely will turn on evaluation of credibility." Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. As the United States Supreme Court has noted in Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991), "[t]here will seldom be much evidence bearing on th[e] issue [of discriminatory intent], and the best evidence often will be the demeanor of the attorney who exercises the challenge." Nevertheless, a race-neutral reason for the challenge or challenges in question must be supplied, and the attorney's statement that he or she had no intent to discriminate, without more, will not be sufficient to meet the requirements of Batson. If the passage of time or the lack of an adequate record prevents the prosecution from reconstructing the factual circumstances of the challenged strike, the trial court must grant the defendant a new trial. Ellison, 841 S.W.2d at 827.

If this was the only error necessitating reversal, this Court would remand this case for a hearing to determine whether the Defendant established a prima facie case and to give the State an opportunity to respond to that prima facie case. However, because we reverse for a new trial due to the trial court's failure to charge reckless homicide as a lesser-included offense, a hearing on this issue is unnecessary. This issue is addressed for the purpose of guiding the trial court upon retrial and possibly facilitating further appellate review.

### III. LESSER-INCLUDED OFFENSES

The Defendant argues that the trial court erred in failing to instruct the jury on the offense of reckless homicide as a lesser-included offense to first degree premeditated murder. Counsel for the Defendant requested the instruction at trial, however, the trial judged omitted the instruction on reckless homicide from his jury charge.[2]

A trial court is under the mandatory duty to instruct the jury on a lesser-included offense, even if such an instruction is not requested, when "any evidence exists that reasonable minds could accept as to the lesser-included offense" and when that evidence is "legally sufficient to support a conviction for the lesser-included offense." State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999). See also Tenn. Code Ann. § 40-18-110(a). In Burns, our supreme court adopted a three-part test for determining whether an offense is a lesser included offense. See Burns, 6 S.W.3d at 466-67. Under the Burns test, an offense is a lesser-included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

---

[2]The trial judge instructed the jury concerning first degree premeditated murder, second degree murder, voluntary manslaughter, and criminally negligent homicide. Apparently, the trial judge intended to charge reckless homicide, but the charge was inadvertently overlooked. Counsel for the Defendant brought the oversight to the trial judge's attention a short time after the jury retired, but a corrective charge was not given. Clearly, if the proof required a charge of negligent homicide, a charge of reckless homicide was also required.

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id.

There can be little doubt that reckless homicide is a lesser-included offense to first degree murder under the Burns test. The State contends that even though reckless homicide is a lesser-included offense to first degree murder, there is no evidence within the record supporting the possibility of a reckless homicide.

The Defendant testified that he fired his pistol at the ground in order to scare the victim and that he could not see the victim when he fired his pistol due to the lack of lighting in the parking lot. The parking lot in question was dark that night and the vegetation near the victim's location on the night of the murder was thick and overgrown. The terrain leading away from the parking lot sloped downward. The bullet entered the victim's body at a downward angle, and the victim's blood trail began some five to ten feet within the wooded area.

Viewing this testimony in the light most favorable to the finding of the lesser-included offense and without making judgments on credibility, we find that the facts within the record are sufficient to support a conviction of, and therefore, a jury instruction on, reckless homicide. Accordingly, the trial court erred in not instructing the jury regarding reckless homicide. This court must now consider if that error was harmless beyond a reasonable doubt.

The Tennessee Supreme Court recently ruled in State v. Ely, that

the right of trial by jury is of constitutional dimension [as] evidenced by its embodiment in Article I, section 6 of the Tennessee Constitution, which states, "the right of trial by jury shall remain inviolate." Accordingly, we hold that this constitutional right is violated when the jury is not permitted to consider *all* offenses supported by the evidence.

48 S.W.3d 710, 727 (Tenn. 2001) (emphasis in original). Furthermore, the supreme court stated that "the proper inquiry for an appellate court is whether the error is harmless beyond a reasonable doubt." Id.

The United States Supreme Court, in Fahey v. Connecticut, observed that, when there is a constitutional violation, the question before an appellate court is whether there is a "reasonable possibility" that the error might have contributed to the verdict. 375 U.S. 85, 86-87 (1963). If the jury had been instructed on reckless homicide, we find that there is a reasonable possibility that the jury would have convicted the Defendant of that charge. We cannot find beyond a reasonable doubt that the trial court's error was harmless.

The State argues that, under State v. Williams, 977 S.W.2d 101 (Tenn. 1998), any error in declining to give an instruction on reckless homicide is harmless beyond a reasonable doubt because the jury was instructed regarding voluntary manslaughter, but convicted the Defendant of second degree murder, thereby implicitly rejecting all lesser-included offenses below voluntary manslaughter. In Williams, the defendant was charged with first degree murder, and the jury was instructed on the lesser included-offense of second degree murder. Id. at 106. The supreme court reasoned that because the jury rejected the immediately lesser offense of second degree murder, it "necessarily rejected all other lesser offenses, including voluntary manslaughter," which was not charged by the trial court. Id. Therefore, the failure to instruct the jury on the offense of voluntary manslaughter was harmless error. Id.

Due to the unique nature of voluntary manslaughter among homicide offenses, we cannot agree that in the present case a strict Williams analysis is conclusive or even applicable. Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). The requirement of "adequate provocation" constitutes a factual finding that transforms what might otherwise be a first or second degree murder into the lesser-included offense of voluntary manslaughter. Thus, voluntary manslaughter, having the same statutory mens rea as first or second degree murder, but with the additional factual finding of adequate provocation, is outside of the traditional line of homicide culpability categories: intentional, knowing, reckless, and negligent.

In the present case, the jury convicted the Defendant of a knowing killing but was precluded from considering whether the Defendant acted with the immediately lesser state of mind of recklessness. The jury was instructed regarding first degree murder, second degree murder, voluntary manslaughter, and criminally negligent homicide. The Defendant argued at trial that he did not intend to shoot the victim, nor did he know that he had shot the victim until the police informed him. There is no evidence of adequate provocation in the record. The jury returned a verdict of guilty of second degree murder.

In a case where no evidence of provocation exists, the logical immediate lesser-included offense of second degree murder is reckless homicide because what distinguishes voluntary

manslaughter from an intentional or knowing killing is not a lesser mental state, but rather, the extenuating circumstance of adequate provocation. In the Defendant's case, failure to charge the jury as to reckless homicide denied it the opportunity to consider the immediate lesser-included offense supported by the facts. The Defendant testified that he fired the gun at the ground in order to scare the victim. The parking lot was dark and surrounded by a dense wooded area. There is no doubt that the Defendant intended to fire the weapon in the victim's general direction. A reasonable jury could have found the Defendant's conduct to be reckless, yet, due to the Defendant's experience with weapons, rejected the notion that the Defendant was simply negligent.

Accordingly, we find that the trial court erred in failing to instruct the jury regarding reckless homicide as a lesser-included offense of first degree murder, and that such error was not harmless beyond a reasonable doubt. The Defendant is therefore entitled to a new trial. The judgment of the trial court must be reversed.

### IV. SENTENCING

Finally, the Defendant challenges the twenty-two year sentence for his conviction of second degree murder. Though we have concluded that the Defendant should be afforded a new trial, we will review his sentencing challenge in the interest of judicial economy and for the purpose of facilitating possible further appellate review. The Defendant contends that the trial court erred by failing to give proper weight to five mitigating factors.[3] We disagree and find no error in the Defendant's sentence.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

---

[3]The Defendant did not challenge the trial court's finding of three enhancement factors at trial, nor does he challenge that finding in this appeal. The trial court found that the Defendant had an extensive criminal history, had shown an unwillingness to comply with a sentence involving release in the past, and employed a firearm during the commission of the crime convicted of. See Tenn. Code Ann. § 40-35-114 (1), (8), (9).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant proposed five mitigating factors to be considered by the trial court. The Defendant contends that (1) he acknowledged his involvement in the offense and showed a willingness to assume responsibility for his conduct, (2) he was clearly remorseful, (3) he aided the authorities in locating or recovering property involved in the crime, (4) he committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct, and (5) the Defendant's family support requires leniency in this matter.

In refusing to apply the Defendant's mitigating factors, the trial court stated I don't find any evidence that this defendant willfully tried to help in the investigation of this case, or that he was remorseful, or that he returned any property. It is sort of ridiculous, I think, to argue to this Court about a person's home life when they're out soliciting sex. I find it difficult to buy a mitigating factor along those lines.

The record demonstrates that the trial court properly followed the statutory sentencing procedure in enhancing the presumptive sentence of twenty years by two years. In addition to rejecting the Defendant's mitigating factors, the trial court found three enhancement factors. The Defendant's challenge to his sentence is without merit.

## CONCLUSION

For the reasons discussed above, we reverse the Defendant's conviction for second degree murder due to the trial court's failure to instruct the jury regarding reckless homicide as a lesser-included offense of first degree murder. We also conclude that the trial court erred by failing to make findings on whether the Defendant established a prima facie case of purposeful discrimination in selection of the jury. This case is remanded for further proceedings.

_____
DAVID H. WELLES, JUDGE

-11-