IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2011

## STATE OF TENNESSEE v. COURTNEY WATKINS

**Appeal from the Criminal Court for Shelby County**
**No.08-05482     John P. Colton, Judge**

---

**No. W2010-01851-CCA-R3-CD  - Filed September 30, 2011**

---

A Shelby County jury convicted the Defendant, Courtney Watkins, of especially aggravated robbery, and the trial court sentenced him to twenty-three years of imprisonment.  On appeal, the Defendant argues that the trial court erred by allowing the hearsay testimony of several witnesses, that photographs depicting the victim's injuries were prejudicial, that the trial court erred by allowing him to be impeached with evidence of a prior conviction, and that the evidence was insufficient to support his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

DAVID H. WELLES, SP. J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Stephen C. Bush, Public Defender, and Barry W. Kuhn, Assistant Public Defender, Memphis, Tennessee, for the appellant, Courtney Watkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises out of the February 25, 2008 especially aggravated robbery of 46-year-old Kelvin McDonald.  A Shelby County grand jury indicted the Defendant for especially aggravated robbery. On June 16, 2010, a jury convicted the Defendant as charged.

The trial court sentenced him on July 18, 2010, to a term of twenty-three years to be served in the Department of Correction.

**Factual Background**

On the afternoon of February 25, 2008, the victim, Kelvin McDonald, was driving his white Lincoln Town Car to Best Buy. On his way, he encountered the Defendant, Courtney Watkins, whom he had met while the two were incarcerated together in the Memphis jail in 2007. The Defendant was seeking a ride to his cousin's residence at the Wingood Apartments, and the victim offered to take him there after he finished a few errands. The victim did not know the Defendant by name, only by his nickname, "Shorty Fat."

During the course of the afternoon, they stopped at a market for some gas, and the victim bought the Defendant some food and drinks. In the Defendant's presence, the victim paid for his purchases with a $100 bill. They also discussed the Defendant's need for a steady job. The victim told him that he was working as a truck driver and gave the Defendant information about how to obtain his commercial driver's license. They also stopped at the victim's cousin's house because he had been having car trouble and had requested the victim's assistance. While at the victim's cousin's house, the victim and the Defendant encountered a man named George Gates, who had also been incarcerated with them.

When they arrived at the Wingood Apartments, the Defendant instructed the victim to drive around to the back to his cousin's apartment. The men encountered a group of Hispanic individuals, and the Defendant spoke to them in Spanish. After the Defendant spoke with them, they all left the area. The Defendant returned to the victim's car and told the victim that his cousin was not home. As the victim turned the car around to leave the apartment complex, the Defendant pulled out a gun and said, "Give me your money." The victim initially thought he was joking because he could not imagine the Defendant doing this to him after he had helped him that afternoon. He told the Defendant to put his gun away and stop playing. The Defendant assured him that he was serious, cocked the gun, and twice fired. Fortunately, the gun misfired both times. After that, he hit the victim in the head with the gun. The victim kept driving, trying to get to a place where he could summon help. The Defendant hit him in the head with the gun a second time while the victim struggled to get his wallet out of his pants. The Defendant told him that he was not moving fast enough and shot him in the head. The victim struggled with the Defendant until he saw a man outside at the apartment complex. The victim rolled down his window and yelled out, "Call the police. He's robbing me."

The man the victim called out to was Larrial Gill, the maintenance man for the Wingood Apartments. While Gill was unloading some equipment at the apartment complex on the afternoon of February 28, he heard a man call out from a white Lincoln, "Call the police. I'm being robbed." He could see two African-American men in the front seat but could not identify either. Gill did not respond to the victim's call for help; instead, he went about his business unloading the equipment. After the car was out of sight, he heard two gunshots. Gill again did nothing in response but went into an apartment in which he was working.

The victim's car subsequently struck a dumpster at the apartment complex. The victim struggled to get out of the car, injuring his knee, but the Defendant held on to him. When the Defendant finally got out of the car, he took the victim's leather jacket and the victim's cellular phone car charger. The Defendant then got back into the car, shot the victim again in the head, and left.

Memphis Patrol Officer Lakeisha Ross responded to the scene. When she arrived, the victim was already in the back of an ambulance, but he was alert and very excited. He told Officer Ross what had happened and that a man with whom he had been incarcerated had robbed and shot him. He explained how the Defendant had come to be in his car that afternoon and how he knew him from their time together while incarcerated. The victim was then taken to a hospital, where he spent a week recovering from his wounds.

Several officers processed the crime scene. Officer Sam Blue took photographs of the victim's Lincoln and collected evidence from the car. He took a number of photographs showing blood on the outside of the driver's side of the car and on the pavement below. Memphis Police Officer Stacy Milligan also photographed the victim's car and areas where fluid samples were identified.

On the same day as the robbery and shooting, Memphis Police Officer Myron Fair interviewed the victim at the hospital. Though the victim was mad and upset, he was clear-minded and recounted to Officer Fair the story of how he had given the Defendant a ride and how he knew him from jail. He also told Officer Fair about their afternoon together, running errands and ending up at the Wingood Apartments. He explained how the Defendant had pulled a gun on him, demanding his money, and the struggle over the gun and subsequent shots to his head. The victim described his assailant as being approximately five feet, nine inches tall and weighing 210 pounds. Officer Fair photographed the victim's injuries.

After his conversation with the victim, Officer Fair learned that the Defendant's first name was Courtney and pulled jail records from the floor and pod on which the victim was incarcerated. As a result, Officer Fair located the Defendant's name and photograph. Officer

Fair then compiled a photographic line-up and presented that line-up to the victim approximately one week after the shooting, after he had been discharged from the hospital. The victim identified the Defendant as his assailant.

Shelby County Sheriff's Sergeant Michaele Byers is the record keeper for the Jail Division. She confirmed at trial that the victim, the Defendant, and George Gates had all been incarcerated together on the same floor and in the same pod from March 28, 2007, to April 16, 2007, when the Defendant was released.

The defense at trial was that the Defendant was not the assailant. To that end, Vander Moore testified that on February 25, 2008, the Defendant was helping him move from his residence on Fields Road to a new residence on Gilleas Road from about 10:30 or 11:00 a.m. until shortly before 3:00 p.m., when the Defendant left to pick up his mother at her job downtown. Moore explained that he is employed by the City of Memphis at the Whitehaven Golf Club but that he took February 25 and 26 off to move. However, Mary Hilliard, the keeper of records from Memphis Light, Gas, and Water, presented records showing that the utilities were disconnected at Moore's Field Road residence on February 21, 2008, and also connected that same day at his new Gilleas Road residence. Sandra Allen, an employee of the City of Memphis Golf Department, testified that Moore worked for five hours on the date of the robbery and shooting, but that he did not work on either February 20 or 21.

Charlotte Watkins, the Defendant's mother, testified that her son picked her up from her place of employment at 3:30 p.m. on February 25, 2008, though she had previously told a state's investigator that she did not know where the Defendant was or what he was doing on February 25, 2008.

## Analysis

### I. Testimony of Larrial Gill and Officers Lakeisha Ross and Myron Fair

In his first three issues, the Defendant contends that the trial court erred by admitting the hearsay testimony of Larrial Gill and Officers Lakeisha Ross and Myron Fair. Following our review of the record, we conclude that the trial court did not abuse its discretion by admitting the testimony of these three witnesses.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible at trial except as provided by the rules or otherwise by law. Tenn. R. Evid. 802. "The determination of whether a statement is hearsay and whether it is admissible through an exception to the hearsay rule is left to the

sound discretion of the trial court." State v. Stout, 46 S.W.3d 689, 697 (Tenn. 2001). As such, this Court will not reverse a trial court's ruling regarding the admission or exclusion of hearsay evidence absent a clear showing that it abused its discretion. Id.

### A. Testimony of Larrial Gill

Larrial Gill testified at trial that while he was unloading some equipment at the Wingood Apartments, he heard a man yell from a vehicle in the apartment parking lot, "Call the police. I'm being robbed." The Defendant objected to this testimony on hearsay grounds. The State countered that the statement was not offered to prove that the victim had been robbed but to explain why Gill did what he did in response. The trial court found that "it's an exclamation which is an excited utterance, and I will not sustain the objection." Gill further testified that he initially ignored the call for help but that shortly thereafter, after the car was out of his sight, he heard two gunshots. He ultimately told a courtesy officer that he had heard some gunshots in the parking lot.

Initially, we disagree with the State that Gill's testimony was not hearsay. Gill was the first witness to testify at trial, and according to the trial record, he was called out of order to accommodate his work schedule. However, at that point in the trial, the only purpose of the statement was to establish the fact of a robbery. The State's argument at trial that it was offered to show what Gill did in response to hearing the statement does not resonate because Gill did nothing in response to the victim's call for help. He testified that he went about his work on an apartment after hearing the victim call for help. The evidence does not establish that he even called police after he heard the gunshots shortly thereafter. It appears that he did not even mention what he heard or saw until approached by a courtesy officer.

However, well-established among the myriad of exceptions to the general rule barring hearsay evidence are excited utterances. Excited utterances are statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2). To qualify as an excited utterance, three criteria must be met: (1) there must be a startling event or condition that causes the stress or excitement; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant was under the stress or excitement caused by the startling event or condition. State v. Gordon, 952 S.W.2d 817, 820 (Tenn. 1997); State v. Samuel, 243 S.W.3d 592, 600 (Tenn. Crim. App. 2007).

We agree that the victim's call for help from his car while he was being robbed qualifies as an excited utterance: the statements were made while he was being robbed at gunpoint, the statements relate to that startling event, and the statements were made while the victim was under the stress or excitement caused by the robbery. However, when Gill

testified at trial, the victim had not yet testified, and no context existed for the statements to be admitted as an excited utterance. That is, no proof had yet been admitted that a robbery had occurred, much less a robbery at gunpoint. The victim subsequently testified that when he saw Gill in the parking lot, he rolled down his car window and yelled for help. He testified that at that time, the Defendant had already demanded money of him at gunpoint, fired the gun at him, and struck him with the gun. Had Gill been called in order, after the victim testified, then certainly the testimony would haven fallen under the excited utterance exception to the hearsay rule.

Though the admission of the statements was premature, any error in the untimely admission is harmless because the testimony would have been admissible as an excited utterance following the victim's testimony. Moreover, Gill neither identified the Defendant as being present in the car nor witnessed any robbery of the victim. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). See, e.g., State v. Fredrick Arnaz Miller, No. E2005-01583-CCA-R3-CD, 2006 WL 2633211, at * 11 (Tenn. Crim. App., Knoxville, Sept. 14, 2006) (Where witness's credibility was attacked, premature admission of testimony that rehabilitated the witness's testimony was harmless.). Therefore, any error in the admission of this testimony was harmless. The trial court did not abuse its discretion by admitting Gill's testimony as an excited utterance. The Defendant is not entitled to relief on this issue.

### B. Testimony of Officers Lakeisha Ross and Myron Fair

The Defendant next contends that the trial court erred by admitting Officer Lakeisha Ross's testimony that, upon her arrival at the scene, the victim told her that he had been assaulted by someone with whom he had been incarcerated. The Defendant objected on hearsay grounds, and the State vaguely argued that the statement was admissible as a prior consistent statement. The trial court overruled the objection. On appeal, the Defendant contends that the victim's statement to Officer Ross was improperly admitted as a prior consistent statement because the victim's credibility was not seriously assailed on cross-examination. The State contends that the statement was admissible as either an excited utterance, a prior statement of identification, or a prior consistent statement. We conclude that the statement was admissible as an exception to the hearsay rule as a prior statement of identification by a witness. See Tenn. R. Evid. 803(1.1).

We note that the hearsay rule does not exclude a "statement of identification of a person made after perceiving the person if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement." Tenn. R. Evid. 803(1.1). In our view, the testimony of Officer Ross met the requirements for admissibility under this exception to the hearsay rule. See State v. Stout, 46 S.W.3d 689, 698 (Tenn. 2001).

The Defendant similarly argues that the trial court erred by admitting the testimony of Officer Myron Fair that when he visited the victim in the hospital on the day of the incident, the victim told him that he had been assaulted by someone he knew from jail. As with Officer Ross, the State argued that this testimony was admissible as a prior consistent statement. Just as with the testimony of Officer Ross, we conclude that the testimony of Officer Fair was admissible as a prior statement of identification by a witness. See Tenn. R. Evid. 803(1.1). The defendant is not entitled to relief on this issue.

## II. Admission of Photographs Depicting Victim's Injuries

The Defendant next contends that the trial court erred in allowing the State to introduce photographs depicting the victim's injuries. The photographs were taken by Officer Fair while the victim was in the hospital. The Defendant argues that the photographs should have been excluded because they were cumulative to the medical proof and the victim's testimony. We disagree.

Trial courts have broad discretion in determining the admission of evidence. See State v. Hutchinson, 898 S.W.2d 161, 172 (Tenn. 1995). For evidence to be admissible, it must be relevant. Tenn. R. Evid. 402. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence." Tenn. R. Evid. 401.

Generally, the admissibility of photographs is a matter to be determined by the trial court in the exercise of its sound discretion. State v. Porterfield, 746 S.W.2d 441, 450 (Tenn. 1988). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997). Tennessee Rule of Evidence 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We have inspected the subject photographs and agree with the trial court that their probative value outweighed any undue prejudicial effect. The State had the burden at trial to prove every element of especially aggravated robbery, in particular that the victim suffered serious bodily injury. Though the victim testified at trial about the nature of his injuries, the trial occurred over two years after the incident, and the victim's wounds were no longer visible. Thus, the photographs were relevant to depict the serious nature of the injuries the

victim suffered. Moreover, the photographs were not particularly gruesome or graphic. The medical proof consisted only of the victim's medical file and was not admitted until later in the trial. No live testimony was presented about the nature and extent of the injuries. Accordingly, we conclude that the photographs were not cumulative of the medical proof, and the trial court did not abuse its discretion by allowing their admission.

## III. Admission of the Defendant's Prior Conviction

The Defendant also contends that the trial court erred by allowing the State to cross-examine him with his prior conviction from Texas for aggravated assault with a deadly weapon because this offense was too similar to the crime in this case. Following our review, we conclude that the trial court did not abuse its discretion by admitting the Defendant's prior conviction for impeachment purposes.

The credibility of an accused may be attacked by presenting evidence of prior convictions. Tenn. R. Evid. 609. However, the prior conviction must be for an offense punishable by death or imprisonment in excess of one year or for a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Additionally, less than ten years must have elapsed between the date the accused was released from confinement and the commencement of prosecution. Tenn. R. Evid. 609(b). The State must also give reasonable written notice of the impeaching conviction before trial, and the trial court must find that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(3).

The fact that a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness. State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997). The trial court must analyze the relevance that the impeaching conviction has to the issue of credibility and then assess the similarity between the crime on trial and the crime underlying the impeachment conviction in balancing the probative value on credibility against its unfair prejudicial effect on the substantive issues. State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999); State v. Farmer, 841 S.W.2d 827, 839 (Tenn. Crim. App. 1992). The trial court's decision to allow the prior conviction under Rule 609 will not be reversed on appeal unless the trial court abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

Our review of the record shows that all of the criteria for admission of a prior conviction under Rule 609 were satisfied. The State properly filed notice of its intent to use the Defendant's prior conviction from Texas for aggravated assault with a deadly weapon to impeach him at trial should he choose to testify. The record reveals that the Defendant

was convicted on January 7, 2005, and had not finished serving his sentence for that offense by the trial in this matter, clearly within the ten-year window required by Rule 609. Additionally, the Texas Penal Code provides that aggravated assault with a deadly weapon is punishable by an indeterminate range of 2-20 years. Tex. Code Ann. § 12.33(a).

Finally, the trial court conducted a hearing on the issue before the Defendant decided to testify. The offense of aggravated assault with a deadly weapon in Texas is defined as an assault that causes serious bodily injury to another or that involves the use or exhibition of a deadly weapon during the commission of the assault. Tex. Code Ann. § 22.02(a)(1-2). An assault is defined as intentionally, knowingly, or recklessly causing bodily injury to another, threatening imminent bodily injury to another, or causing offensive or provocative contact with another. Tex. Code Ann. § 22.01(a)(1-3).

The Defendant asserted at trial and maintains on appeal that the offense of aggravated assault with a deadly weapon is too similar to the offense of especially aggravated robbery. As discussed more fully below, especially aggravated robbery is the knowing theft of property from the person of another by violence or putting the person in fear, accomplished with a deadly weapon, and inflicting serious bodily injury upon the person. Tenn. Code Ann. §§ 39-11-401, -403. Granted, the two offenses do involve the use of a deadly weapon, but aggravated assault with a deadly weapon does not require serious bodily injury; it may be accomplished by the use or display of a weapon during the assault, which in itself does not require an injury. Additionally, aggravated assault with a deadly weapon does not require the taking of property from another.

We agree with the trial court that any prejudicial effect of the prior conviction did not outweigh its probative value. The key point of controversy in this case was whether the Defendant was the assailant; thus, his credibility was of paramount importance. Therefore, evidence reflecting on his credibility was relevant to the case, and its probative value significantly outweighed any possible prejudicial effect. Moreover, the jury was aware from the outset of the trial that the Defendant and the victim knew each other from time spent incarcerated together. It is unlikely, therefore, that the jury would have been influenced by this evidence of the Defendant's prior conviction.

## IV. Sufficiency of the Evidence

The Defendant next contends that the evidence is insufficient to support his conviction for especially aggravated robbery. Following our review, we conclude that the evidence was sufficient to support the jury's verdict of guilty beyond a reasonable doubt.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Especially aggravated robbery is the knowing theft of property from the person of another by violence or putting the person in fear, accomplished with a deadly weapon, and inflicting serious bodily injury upon the person. Tenn. Code Ann. §§ 39-11-401, -403. A "theft" occurs when, with intent to deprive the owner of property, a person knowingly obtains or exercises control over the property of another without the owner's effective consent. Tenn. Code Ann. § 39-11-106(a)(9). Consent is not effective when induced by coercion. Tenn. Code Ann. § 39-11-106(a)(9)(A). A firearm is a "deadly weapon" under Tenn. Code Ann. § 39-11-106(a)(5)(A). "Serious bodily injury" is bodily injury involving a substantial risk of death. Tenn. Code Ann. § 39-11-106(a)(34)(A).

The evidence presented at trial shows that the Defendant used a gun, a deadly weapon, to inflict serious bodily injury on the victim by twice shooting him in the head and twice pistol-whipping him. The photographs of the victim's injuries show large gashes to his head, and the victim testified about the two gunshot wounds to his head. The evidence also

showed that the Defendant took the victim's leather jacket and his telephone's car charger without his consent. This evidence was more than sufficient to support the jury's verdict.

The Defendant, however, maintains that the evidence of his identity as the assailant is based on the uncorroborated testimony of the victim and, therefore, insufficient. Generally, a defendant may be convicted upon the uncorroborated testimony of one witness. See State v. McKnight, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994) (holding that a "defendant can be convicted of simple rape based solely upon testimony of the victim"); Letner v. State, 512 S.W.2d 643, 649 (Tenn. Crim. App. 1974). The victim never wavered in his identification of the Defendant as the assailant. Despite the testimony that the Defendant was helping his friend Vander Moore move on the day of the attack, the jury chose to disregard this evidence, as was their prerogative. Questions about the credibility of witnesses and the weight and value of the evidence are resolved by the jury. Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 959. We decline to disturb the jury's determination in light of the convincing evidence of the Defendant's guilt.

### Conclusion

For the reasons articulated above, we affirm the Defendant's conviction for especially aggravated robbery.

_____
DAVID H. WELLES, SPECIAL JUDGE